## Trimble's heirs v. Ward.

ERROR TO CARTER CIRCUIT.

1. The question whether a particular place is part of premises leased does not depend alone upon a question of boundary, but also upon the intention of the parties to the lease which may be determined by the extrinsic evidence in aid of the lease. (*1 Greenleaf, Sec.* 286, 1 *Term Rep.* 701.)

Judge MARSHALL delivered the opinion of the court.

In 1829, James Ward, then living on a farm on Little Sandy river, which he had occupied and cultivated for nineteen or twenty years, took from David Trimble a lease for the year 1829, of his, Trimble's, alleged one undivided third part of 4,000 acres on Little

Sandy, patented to George Johnson, and of his alleged undivided third part of one fourth of 8,000 acres lying at the same place, patented to M. S. and M., together with his one-third part of a salt well on said land now in possession of George N. Davis, Nathaniel Dawson, and said Trimble, or their tenants, for which Ward agreed to pay at the furnace, 200 bushels of salt as rent, and to re-deliver the premises at the end of the year in as good repair *as he gets it;* also not to cut down any timber until the timber now cut down on the undivided third part of said Trimble is *used at the furnace* as fuel. This lease was signed by both parties, and on the same paper is a writing by which the lease was renewed for the year 1830, at a rent of 260 bushels of salt, and with the following additional stipulation: "that if *the salt well should fail,* the rent is to be reduced in proportion to the time said Ward does not work it after such failure, his time being one-third of the year." The farm and premises which Ward had occupied before the date of these leases, he continued to occupy in the same manner without question or disturbance until his death in 1845 or 1846, and his son, J. B. Ward, has occupied it from that time to the present. In 1848, the heirs of Trimble, who had died about the year 1842, brought this action of ejectment to recover from J. B. Ward the possession of one-third of said farm and premises or so much thereof as may be found to be within either of the patents mentioned in the lease. They show no title in Trimble or themselves, but such as may be evidenced by the lease, and in fact, base their right of recovery wholly upon the estoppel claimed to grow out of said leases, and to extend to the boundaries of the two patents named therein.

Upon the face of the lease without reference to any extrinsic facts not mentioned in it, it is obviously a lease of a salt well and salt works, and of the adjacent lands within the two patents for the purpose of supplying the works with fuel, and of con-

tinuing such possession as the lessor already had. That these were the essential and exclusive objects of the lease, that it was not supposed or intended to include a farm and residence, or to give to the lessor any new possession, but to give a new possession to the lessee, is evident from a consideration and comparison of the stipulations which have been quoted. In the first place, no other objects besides those referred to as descriptive of the land are mentioned in the lease except the salt well, the furnace, and the timber. Second: the lessee is prohibited from cutting down any timber until that already cut shall be used at the furnace, rendering it extremely improbable that any farm and residence were leased. Third: if, by failure of the salt well, the lessee should have no beneficial use of it, he was under the second lease to pay no rent, which shows, that without the use of the salt water for making salt, nothing valuable was supposed or intended to be granted by the lease, and excludes the idea that a farm which had been long occupied, was supposed or intended to be leased. And all of these inferences are corroborated by the stipulation that the lessee shall, at the end of the year, *re-deliver the premises in as good repair as he gets it*, which evidently applies to premises which the lessee is to receive under the lease, and not to premises then and for many years in his possession, and held independently of the lessor. And the lease shows that Trimble was in possession of one-third of the salt well, and of course with the appurtenances, and that this possession was to be received by the lessee and re-delivered to the lessor. It may be added that the evidence discloses no inducement whatever which might have influenced Ward to submit his possession to Trimble, and no fact which could have afforded a pretext on the part of Trimble for demanding such submission. He had no title to these premises. He pretended none. He never claimed, and so far as appears, never supposed that Ward's farm was included in either of the patents in which he claimed

an interest. He asserted no right to the possession of the farm after the expiration of the lease. The testimony establishes the fact that the premises occupied by Ward were regarded by all concerned as distinct from the salt well and the lands attached to it. And it may be assumed as absolutely certain that Ward never knowingly acknowledged that he held or would hold them in subordination to Trimble, and never knowingly undertook to deliver them to him, nor ever supposed that he was bound to do so.

Now, with respect to the estoppel, the question is not simply whether this farm and premises were embraced within the boundaries of the lease, which, upon the evidence, is not absolutely certain, but whether, if so embraced within the boundary, it was in fact contemplated by the parties as a subject of the contract, whether it was intended and understood to be leased, and whether any of the stipulations of the lease apply or were intended to apply to it.

The question whether a particular place is a part of the demised premises does not depend exclusively upon the question of boundary, but also upon the question of intention, which may be determined by bringing in aid of the words of the demise such extrinsic facts explanatory of the subject and of the rights of the parties as may show the meaning of the instrument and the intention of the parties. (1 *Greenleaf's Evidence*, sec. 286, *Doe on dem. Freeland v. Bent*, 1 *Term Rep.* 701.) The first instruction asked for by the plaintiff was properly overruled, because it made the estoppel of the lessee, and the right of the recovery of the plaintiff, to rest exclusively upon the fact of the premises in question being within one or both of the patents. The second and third instructions are at least as favorable to the plaintiff as is consistent with law. And as the instructions given for the defendant are in substantial conformity with our views as herein expressed, we should not disturb the verdict for the defendant, unless it should appear that some of the instructions, though abstractly correct, may

*Margin notes:*

TRIMBLE'S HEIRS *vs.* WARD.

1. The question whether a particular place is part of premises leased does not depend alone upon a question of boundary, but also upon the intention of the parties to the lease which may be determined by extrinsic evidence in aid of the lease. (*Greenleaf*, sec. 286; 1 *Term Rep.* 701.)

have had no foundation in the evidence, and may have misled the jury. This objection is made to the instruction with regard to the effect of fraud on the part of Trimble in procuring this lease. But this objection is unavailing as a ground of reversal, because, even if the instruction be abstract, it cannot be regarded as practically misleading, since in our opinion, the jury was bound upon the whole evidence to find for the defendant, and a contrary verdict should have been set aside.

Wherefore, the judgment is affirmed.

APPERSON for plaintiff; FARROW and HOOD for defendant.